IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

GERALD KERCHER,                          :
                    Plaintiff,          :
                               :
              v.                          :      Civil No.: 5:25-cv-02586-JMG
                               :
CARPENTER TECHNOLOGY CORPORATION,  :
      *et al,*                            :
                    Defendants.         :

---

**MEMORANDUM OPINION**

**Gallagher, J.**                                                    **February 12, 2026**

### I.      BACKGROUND

Plaintiff Gerald Kercher ("Plaintiff") alleges that he was wrongfully discharged from his employment with Carpenter Technology Corporation ("Carpenter"). Carpenter contracts with Metropolitan Life Insurance Company ("Metropolitan")[1] to process its employees' FMLA claims. Amended Complaint ¶ 6, ECF No. 23. Before Carpenter hired Metropolitan as its vendor, Carpenter used a different third-party administrator, Lincoln Financial, with whom Plaintiff stated he had no difficulties submitting or managing his FMLA paperwork. *Id.* ¶¶ 7, 10. According to Plaintiff, after Metropolitan became the administrator, he was "unable to obtain [Metropolitan's] timely and competent assistance with the FMLA paperwork." *Id.* ¶ 11. Plaintiff further asserts that "there was no continuity of services." *Id.* ¶ 12. Each time he contacted Metropolitan, Plaintiff alleges he was

---

[1] The Parties refer to Metropolitan Life Insurance Company as "MetLife" in their filings. The Court clarifies that MetLife Services and Solutions, LLC was terminated as a defendant in this case on December 3, 2025. Accordingly, the Court will refer to the remaining defendant, Metropolitan Life Insurance Company, as "Metropolitan" going forward and will construe any reference to "MetLife" in the Parties' submissions as referring to Defendant Metropolitan Life Insurance Company.

required to speak with a new representative who was unfamiliar with his claim and unable to advise him on the steps necessary to support his request for FMLA benefits. *Id.*

In March 2024, Plaintiff submitted paperwork for two separate FMLA claims. *Id.* ¶ 17. One request sought intermittent leave related to Plaintiff's anxiety, and the other concerned a sinus infection. *Id.* Plaintiff forwarded the completed forms to Metropolitan on March 14, 2024. *Id.* ¶ 18. Shortly after, Metropolitan informed Plaintiff that additional information was required. *Id.* ¶ 19.

Plaintiff alleges that the Metropolitan representative handing his case mistakenly entered both FMLA requests under a single claim number. *Id.* ¶ 20. He asserts that this error caused ongoing confusion throughout the process and ultimately contributed to his termination. Plaintiff further contends that follow-up documentation submitted by either himself or his physician was repeatedly routed to an outdated file within Metropolitan's system and that "[Metropolitan] employees failed or otherwise refused to check to see if the documentation was sent to the correct and active file." *Id.* ¶ 21.

Plaintiff asserts that, during this time, the uncertainty surrounding his job stability triggered multiple panic attacks, which in turn caused him to miss work. *Id.* ¶ 23. He further alleges that "the lack of a decision regarding the requested FMLA coverage made [his] condition worse and caused him unnecessary emotional distress and harm." *Id*.

On July 29, 2024, Carpenter's Manager informed Plaintiff that he was being terminated for absenteeism. *Id.* ¶ 24. Plaintiff asserts that, after his termination, he spent several weeks attempting to finalize the FMLA claim process. *Id.* ¶ 25. Then, on August 14, 2024, Plaintiff met with a representative from Carpenter to present evidence of his compliance and to advocate for reinstatement. *Id.* ¶ 26. During that meeting, Plaintiff stated that Metropolitan had advised him by phone that his FMLA claim would be approved and backdated upon receipt of final documentation from his physician. *Id.*

On August 19, 2024, Plaintiff's FMLA claim was approved and backdated to March 5, 2024. *Id.* ¶ 27. Plaintiff then contacted Crystal Arndt ("Arndt"), a member of Carpenter's HR Team, to inform her of the approval and to ask whether he would be reinstated to his former position. *Id.* ¶¶ 28-29. Arndt responded that the Review Committee would contact him directly once a decision had been made. *Id.* ¶ 29. Plaintiff alleges that, on or about August 21, 2024, frustrated by Carpenter's "refusal to communicate with him," he contacted Ron Lanning ("Lanning") from the Pennsylvania Department of Labor and Industry, and explained this situation. *Id.* ¶ 30. According to Plaintiff, Lanning advised him to notify Arndt that if Carpenter failed to respond, Lanning would reach out to the company directly. *Id.*

Plaintiff alleges that, less than 24 hours later, on August 22, 2024, Carpenter contacted him to advise that the Review Committee had upheld his termination. *Id.* ¶ 31. He contends that this decision was made in direct retaliation for his outreach to Lanning and his request for assistance. *Id.* ¶ 32. Plaintiff eventually filed suit against Metropolitan and several other defendants. His sole claim against Metropolitan is for negligent interference with contract, and Metropolitan has filed a Motion to Dismiss that claim. Metropolitan's argument centers on the assertion that the FMLA preempts Plaintiff's claim.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Although the plausibility standard does not impose a probability requirement, it does require

a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations and citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Courts are "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## III.    DISCUSSION

Metropolitan argues that the FMLA preempts Plaintiff's claim against them. This Court agrees. Courts have rejected attempts to recast alleged violations of the FMLA as separate claims, where the asserted duty and alleged injury derive solely from the statute. *See Kiely v. Univ. of Pittsburgh Medical Ctr.*, 2000 WL 262580 (W.D. Pa. Jan. 20, 2000) (finding that Congress created a comprehensive scheme to provide remedies for violations of the FMLA and holding that the statute preempted a negligent supervision claim premised on an FMLA violation); *Kilvitis v. County of Luzerne,* 52 F. Supp. 2d 403, 418 (M.D. Pa. 1999) (holding that "the FMLA provides a comprehensive remedial measure that evinces Congress' intent to foreclose" alternative enforcement mechanisms); *Desrochers v. Hilton Hotels Corp.*, 28 F. Supp. 2d 693, 695 (D. Mass. 1998) (holding that a state law claim could not be based on an alleged FMLA violation because "Congress intended the FMLA's specific remedies to be exclusive, and, thus, the [state law] claim cannot be based on rights granted by the FMLA"); *Vargo-Adams v. U.S. Postal Serv.*, 992 F. Supp. 939, 944 (N.D. Ohio 1998) (holding that the FMLA preempted a wrongful discharge claim under state law).

Accordingly, this Court also concludes that the FMLA establishes a comprehensive remedial scheme demonstrating Congress' intent to preempt any state law tort claims based on an alleged

FMLA violation. Therefore, to the extent that Plaintiff's claim is grounded in conduct by Defendants that would violate the FMLA, the claim is preempted, and Defendants' Motion to Dismiss is granted.

Here, Plaintiff's negligent interference with contract claim is predicated on Metropolitan's alleged failure to properly process his FMLA request. The duty Plaintiff seeks to enforce (an obligation to timely and correctly administer FMLA leave) exists solely by virtue of the FMLA. Absent the statute, Metropolitan would owe Plaintiff no duty to evaluate, approve, or process medical leave. Regardless of how Metropolitan may have negligently mishandled Plaintiff's FMLA requests, it is ultimately Carpenter (the principal in the relationship with Metropolitan and the employer in the relationship with Plaintiff) that is responsible for any alleged violation of Plaintiff's FMLA rights.

Permitting Plaintiff to proceed under a negligence theory would impermissibly expand the scope of liability beyond that authorized by Congress. The FMLA provides causes of action for intentional interference and retaliation; it does not recognize liability for negligent interference. Allowing such a claim to proceed under state law would conflict with the statute's enforcement scheme and remedies, and would constitute an improper alternative mechanism for enforcing FMLA rights. Accordingly, Plaintiff's negligent interference claim must be dismissed.

## IV. CONCLUSION

Because Plaintiff's claim is fundamentally incompatible with the FMLA's statutory scheme, amendment would be futile. Accordingly, Plaintiff's claim for negligent interference against Metropolitan Life Insurance Company is dismissed with prejudice. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

5